Hon. Pierre Adolphe Rost, ⎫
Hon. George Rogers King, ⎬ *Associate Justices.*
Hon. Thomas Slidell, ⎭

---

## Duval *v.* Ardrey et al.

Where a debtor, in insolvent circumstances, executes to a third person a lease for a term of years of all his property, consisting of a plantation, slaves and moveables, on the condition of his paying certain debts of the lessor, and allowing him out of its revenues a certain amount for the support of his family, &c., the effect of the lease being to charge the appropriation which the law would make of the property, and to impede the legal recourse of the creditors of the lessor upon it, any creditor, not a party to it, may require that it be annulled so far as he is affected by it.

APPEAL from the District Court of Rapides, *King*, J.
*Edelin*, for the plaintiff. *Hyams*, *Elgee*, *Dunbar*, *Brent* and *Ogden*, for the appellant.

The judgment of the court was pronounced by

Slidell, J. In January, 1841, *Adelia M. Duval* and her husband recovered judgment against *L. F. Ardrey*, who was her tutor, for $1235 85, with interest, and with a legal mortgage on the lands and slaves of *Ardrey*, dating from the year 1838. The action now brought is an action to set aside, as made in fraud of her rights, a lease executed on the 8th March, 1841, by *Ardrey* and his wife to *Ardrey's* brother-in-law, *Brashear*, of a tract of land alleged in the lease to be cultivated by *Ardrey* and wife as a cotton plantation, with all the slaves established thereon, without however any special description of them, and all the cattle, horses, carts, and all the moveables on said plantation of every nature and kind whatsoever.

This lease was for the term of five years. The lessee was to have, during the whole period, the use and possession of the property leased, and the sole use and enjoyment of all the crops and revenues, as if he were sole owner. On his part, the lessee bound himself personally to pay certain debts enumerated in the lease, some due by *Ardrey*, some by *Ardrey* and his wife; and also bound himself to pay out of the crops of the plantation, in a certain designated order, certain debts due by the lessor; and that if, after paying the enumerated debts, there should remain any surplus of funds in the lessee's hands, he should apply the same, *pro rata*, to the extinction of all the remaining debts which the lessors may then owe; and that if the debts should be paid before the term stipulated, then the lessee should re-deliver the property to the lessors.

The lease also contains a reservation of an annual allowance out of the crops to *Ardrey* and wife of $1500, and provides that they should have the exclusive use of the dwelling house on the plantation, with its out-houses and appurtenances, gardens, carriages and carriage horses, and certain house-servants. They were also to be supplied with such provisions as might be deemed necessary for the support of a family.

This lease was executed with the knowledge and approbation of a portion of the preferred creditors; and, on the day of its execution, a portion of these creditors whose claims the lessee had thus obligated himself personally to pay, and to whom he had also given his guaranty on notes of the lessors, gave him a counter-letter, "promising to hold him harmless from his liabilities so as aforesaid, in the event that the lease already executed should be annulled by any of the said *Ardrey's* creditors on the ground of fraud, and that after the matter should be tried in a court of the last resort."

A portion of these preferred creditors have intervened, and resist the plaintiff's claim for relief. The lessors, in their answer, express their willingness that the lease should be set aside. The lessee at first filed a general denial, but subsequently, by an amended answer, he sets forth that a portion of the property had been taken from him by executions against the lessors, so as to render the property unfit for the uses and purposes for which it was originally leased to him, and prays that, if the plaintiff should succeed in his suit, the entire lease should be annulled as to him. The intervenors allege in the pleadings collusion between the plaintiff, *Ardrey*, and *Brashear*, in instituting the suit for the purpose of obtaining the cancellation of the lease, and depriving them of the benefit of its provisions. This allegation is negatived by the plaintiff's answer to interrogatories, propounded by the intervenors. There was judgment in the court below, decreeing that the lease be set aside and annulled, so far as relates to the plaintiff. The defendant, *Brashear*, has appealed.

The evidence satisfactorily establishes the following facts: That, at the date of the execution of the lease, *Ardrey* owed a large amount of debts, many of which existed in the form of judgments; that his wife also was a judgment debtor; and that *Ardrey* was deeply insolvent. That the intervenors were aware of the condition of his affairs, and that a portion of them advised the execution of the lease, and established the order of payment mentioned in the lease; that the lease comprehends all the property of *Ardrey*; that a portion of the slaves and moveables belonged to *Ardrey*. That the plantation had been cultivated by *Ardrey* and wife; that the plantation, and a considerable portion of the slaves, were her paraphernal property; but that the plantation had been much improved during the marriage by clearing the lands, by expenditures

upon the buildings, and by the purchase of valuable machinery. These expenditures appear to have been made with community funds; and the improvement of the land, by clearing, &c., was the result of the common labor and industry; that the lessee was a preferred creditor of *Ardrey*, his surety in certain obligations, and his brother-in-law.

Whether there was moral fraud, on the part of the two parties to this lease, and of the creditors for whose debts a provision by preference was thus made, is a question discussed with much warmth by counsel, but which it is unnecessary for us to consider. *Ardrey* had mismanaged his affairs, and it may well be that the lessee and the preferred creditors sincerely believed that, through the more skilful and industrious management of the lessee, they might increase the revenues of the estate, and thus ultimately satisfy all the creditors, and rescue *Brashear* from the embarrassment in which he had been involved for his friend and connection. But however this may be, such considerations do not relieve the case from the legal fraud which surrounds it. The stipulations of the lease are such, as to change. the appropriation which the law would make of the debtor's property. Preferences are given, and a provision is made for the maintenance of the debtor, neither of which are sanctioned by law, nor would have resulted, if, instead of this arrangement, the debtor had made a *cessio bonorum*. Instead of a judicial application of the property by sale to the payment of debts, which it was the duty of the insolvent to have obtained by a cession, it is locked up in the hands of a trustee chosen by the lessors for a long term of years, and its revenues only, after heavy deductions in favor of the lessors, devoted to the creditors. All this is done by a debtor deeply insolvent, with a manifest knowledge of such insolvency on the part of the lessee, himself a preferred creditor, and of the intervenors, preferred creditors, and to the evident detriment of the plaintiff, whose legal recourse against the property was embarrassed by this temporary transfer, and his rights in the common pledge impaired.

It is said that some of the creditors for whom provision was thus made, held, independently of the stipulations of the lease, rights upon portions of the property superior to those of the plaintiff. But to this we answer that, those rights bore only upon certain portions of the leased property, and the preferences created by the lease are upon the revenues of the entire fund; that moreover the lease seeks to throw a net over the property, and to abstract it from the direct pursuit of the creditor. It cannot therefore be for an instant contended, that the plaintiff was not injured.

It is said by the intervenors that, so far as the paraphernal property of the wife is concerned, she was not the plaintiff's debtor, and could therefore dispose of it as she thought proper. But it will be observed that, though the land was the property of the wife, it had been much improved during the marriage by the common industry and expenditures, and she was, *pro tanto*, the debtor of the community. It does not appear that she has other property, and it is manifest that the exercise of the rights of the plaintiff, a creditor of the community, as against her estate. so far as it may, on investigation, prove a debtor of the community, is embarrassed by the disposition which she has thus made of it. The entire revenues and control of her estate she has sought to place in the lessee's hands, for the benefit of preferred creditors, without any settlement of the community, to which, on investigation, there is reason to suppose, she would be found to be indebted.

The plaintiff, though named as a beneficiary in the lease, is not satisfied with the rank assigned to her, and has not chosen to accept of its benefit. She has a right to insist that it be annulled, so far as it affects her interests, and such is the judgment of the court below. 　　　　　　　*Judgment affirmed.*